1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  DANE R. GILLETTE
   Chief Assistant Attorney General
3  JULIE L. GARLAND
   Senior Assistant Attorney General
4  ANYA M. BINSACCA
   Supervising Deputy Attorney General
5  BRIAN C. KINNEY, State Bar No. 245344
   Deputy Attorney General
6   455 Golden Gate Avenue, Suite 11000
    San Francisco, CA  94102-7004
7   Telephone:  (415) 703-5255
    Fax:  (415) 703-5843
8   Email:  Brian.Kinney@doj.ca.gov

9  Attorneys for Respondent Robert Ayers

10

11            IN THE UNITED STATES DISTRICT COURT

12          FOR THE NORTHERN DISTRICT OF CALIFORNIA

13                  SAN FRANCISCO DIVISION

14

| | |
|---|---|
| **RONALD D. MOORE,** | C07-3426  JSW |
| Petitioner, | **ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **v.** | |
| **ROBERT L. AYERS, JR., Warden,** | |
| Respondent. | |
| | Judge:   The Honorable Jeffrey S. White |

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

ANSWER TO THE ORDER TO SHOW CAUSE .......................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ...................... 8

    ARGUMENT

        THE STATE COURT'S DENIAL OF MOORE'S HABEAS CLAIM WAS
        NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION
        OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN
        UNREASONABLE DETERMINATION OF THE FACTS. ..................... 8

        A.   The San Mateo County Superior Court Decision Was Not Contrary
             to Clearly Established Federal Law. ..................... 9

             1.   Moore received all process due under the only United States Supreme
                  Court law addressing due process in the parole context. ..................... 9

             2.   The Ninth Circuit's some-evidence test is not clearly
                  established Supreme Court law. ..................... 9

             3.   Even if the some-evidence standard were clearly established
                  federal law, the San Mateo County Superior Court correctly
                  applied this standard. ..................... 11

             4.   The Board may rely on static factors to deny parole. ..................... 13

        B.   The San Mateo County Superior Court Decision Upholding the Board's
             Parole Denial Reasonably Determined the Facts. ..................... 14

CONCLUSION ..................... 16

1

**TABLE OF AUTHORITIES**

2
                                                                    **Page**

3
<u>Cases</u>

4
*Biggs v. Terhune*
    334 F.3d 910, 916-917 (9th Cir. 2003)                    14

5
*Carey v. Musladin*
    ___ U.S. ___, 127 S.Ct. 649, 653                          10

6

*Dannenberg*
7
    34 Cal. 4th at 1070-71                                    7

8
*Estelle v. McGuire*
    502 U.S. 62, 67 (1991)                                    7

9

*Foote v. Del Papa*
10
    492 F.3d 1026, 1029 (9th Cir. 2007)                       10

11
*Greenholtz v. Inmates of Neb. Penal & Corr. Complex*
    442 U.S. 1, 12 (1979)                          6, 9, 11, 16
12

*In re Dannenburg*
13
    34 Cal. 4th 1061, 1087 (2005)                          6, 14

14
*In re Rosenkrantz*
    29 Cal. 4th 616, 658 (2002)                         8, 10, 12
15

*Irons v. Carey*
16
    505 F.3d 846, 851 (9th Cir. 2007)                       6, 11

17
*Nguyen v. Garcia*
    477 F.3d 716 (9th Cir. 2007)                              10
18

*Sass v. Cal. Bd. of Prison Terms*
19
    461 F.3d 1123, 1128 (9th Cir. 2006)                  6, 11, 12

20
*Sandin v. Connor*
    515 U.S. 472, 484 (1995)                                   6

21

*Schriro v. Landrigan*
22
    __ U.S. __, 127 S. Ct. 1933, 1942 (2007)                  10

23
*Superintendent v. Hill*
    472 U.S. 445 (1985)                                    11, 12
24

*Wainwright v. Greenfield*
25
    474 U.S. 284 (1986)                                       11

26
*Williams v. Taylor*
    529 U.S. 362, 412 (2000)                                   8
27

*Ylst v. Nunnemaker*
28
    501 U.S. 797, 803-04 (1991)                                9

**TABLE OF AUTHORITIES  (continued)**

**Page**

**Statutes**

28 United States Code
    § 2244(d)(1)     8
    § 2254(b)     6
    § 2254(d)(1)     6
    § 2254(d)(1-2)     8
    § 2254(d)(2)     15
    § 2254(e)(1)     15

California Code of Regulations, Title 15
    § 2282     7
    § 2402, subd. (b)     7, 14
    § 2402, subd. (c)(1)(C)     12
    § 2402, subd. (c)(1)(D)     12

**Other Authorities**

Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA)     7-11, 13-16

Answer to Order to Show Cause; Mem. of P. & A.

*Moore v. Ayers*
C07-3426 JSW

1 | EDMUND G. BROWN JR.
Attorney General of the State of California
2 | DANE R. GILLETTE
Chief Assistant Attorney General
3 | JULIE L. GARLAND
Senior Assistant Attorney General
4 | ANYA M. BINSACCA
Supervising Deputy Attorney General
5 | BRIAN C. KINNEY, State Bar No. 245344
Deputy Attorney General
6 | 455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102-7004
7 | Telephone: (415) 703-5255
Fax: (415) 703-5843
8 | Email: Brian.Kinney@doj.ca.gov

9 | Attorneys for Respondent Robert Ayers

10

11 | IN THE UNITED STATES DISTRICT COURT

12 | FOR THE NORTHERN DISTRICT OF CALIFORNIA

13 | SAN FRANCISCO DIVISION

14 |

| | |
|---|---|
| **RONALD D. MOORE,** | C07-3426 JSW |
| Petitioner, | **ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES** |
| v. | |
| **ROBERT L. AYERS, JR., Warden,** | |
| Respondent. | |
| | Judge: The Honorable Jeffrey S. White |

21 | Petitioner Ronald D. Moore, an inmate at San Quentin State Prison and serving an

22 | indeterminate sentence for first-degree murder, represents himself in this habeas action. Moore

23 | alleges that the Board of Parole Hearings unconstitutionally denied him parole at his November

24 | 28, 2005 parole consideration hearing. Specifically, Moore claims that the Board violated his

25 | due process rights because some evidence did not support its decision. The Court issued an

26 | October 29, 2007 Order to Show Cause, and Respondent Robert Ayers, the Warden of San

27 | Quentin State Prison, submits this Answer with supporting memorandum of points and

28 | authorities.

Answer to Order to Show Cause; Mem. of P. & A.

*Moore v. Ayers*
C07-3426 JSW

1      **ANSWER TO THE ORDER TO SHOW CAUSE**

2      In response to the Petition for Writ of Habeas Corpus filed on June 29, 2007, Respondent

3  hereby admits, denies, and alleges:

4      1.    Moore is lawfully in the custody of the California Department of Corrections and

5  Rehabilitation (CDCR) following his August 1, 1988 conviction for first-degree murder. (Ex. A,

6  Abstract of Judgment.) He is currently serving an indeterminate sentence of twenty-five years to

7  life.

8      2.    Moore does not challenge his underlying conviction in the current proceeding. Also,

9  Moore does not contest that he received notice of his 2005 parole consideration hearing,

10  appeared and participated at the hearing, and was told and received a copy of the Board's

11  decision finding him unsuitable for parole.

12      3.    Respondent affirmatively alleges that Moore was convicted of first-degree, torture

13  murder for killing Claire Miller, a thirty-four year old female who maintained a live-in and

14  sexually-intimate relationship with Moore. (Ex. B, Parole Hearing Transcript, at p. 62; Ex. C,

15  2002 Mental Health Evaluation, at p. 2; Ex. D, First District Court of Appeal Decision, at p. 1.)

16  At the time of the murder, Moore lived with the victim in a motel room, located in San Mateo.

17  (Ex. E, Probation Officer's Report, at p. 3.) Ms. Miller "more or less supported" Moore. (*Id.*)

18  Moore did not have a job, and Ms. Miller occasionally engaged in acts of prostitution. (*Id.* at p.

19  3, 4.) The two smoked crack cocaine and shared drugs with each other. (*Id.*)

20      In the early morning hours of November 10, 1986, Moore began arguing with Ms. Miller

21  about her use of their drug supply with other people while she was away from their motel room.[1/]

22  (Ex. B, at pp. 13, 31-33.) Moore brutally beat Ms. Miller over a long period of time. (*Id.* at pp.

23  59-60.) Witnesses heard loud noises and screaming coming from their motel room, and

24

_____

25      1. The Probation Officer's Report indicates that Moore claimed the argument started because

26  Ms. Miller "lied to him about her use of cocaine and seeing other men and having sexual relations
   with them in order to obtain crack cocaine." (Ex. E, at p. 4.) In the 2005 parole consideration

27  hearing, Moore clarified by stating that the two maintained an open relationship and that he was not
   jealous that she had sex with other men, but that she had used their drug supply with other people

28  while away from the room. (Ex. B, at pp. 26, 30-31.)

Answer to Order to Show Cause; Mem. of P. & A.                                    *Moore v. Ayers*
                                                                                 C07-3426 JSW

2

1    described the offense as loud and vicious. (Ex. C, at pp. 2, 5.) Moore also strangled Ms. Miller

2    with his hands. (Ex. B, at pp. 49, 58.) During Moore's long and brutal assault, Moore inflicted

3    serious head injuries upon Ms. Miller. (Ex. C, at p. 4.)

4        At approximately 2:00 p.m., the manager of the motel called for emergency assistance. (Ex.

5    E, at p. 4; Ex. F, 2005 Life Prisoner Evaluation Report, at p. 1.) He reported to the emergency

6    dispatch that he had received a telephone call from a hysterical male asking for the police and an

7    ambulance to be sent to Room 229. (*Id.*) A San Mateo police officer responded and found

8    Moore in Room 229 with the victim, Ms. Miller. (*Id.*) Ms. Miller was lying nude, unconscious,

9    and apparently badly beaten. (*Id.*) Ms. Miller had bruises all over her body. (*Id.*; Ex. C, at pp. 2,

10    4.) The ambulance transported Ms. Miller to the hospital. (Ex. E, at p. 4.) However, she had

11    been beaten so severely that she died of a massive brain injury. (*Id.*; Ex. C, at p. 4.)

12        Initially, Moore told the police that he had returned home to the motel room and found the

13    victim unconscious. (Ex. E, at p.4.) Moore said that Ms. Miller occasionally engaged in acts of

14    prostitution and when she did, he would leave the room. (*Id.*) He claimed that on this occasion,

15    he had left the room for this reason. (*Id.*) The police officers continued their investigation and

16    interrogation of Moore. (*Id.*) Subsequently, Moore changed his story. (*Id.*) He told the officers

17    that he and Ms. Miller had smoked crack cocaine and gotten into an argument. (*Id.*) He

18    acknowledged that it turned physical, she "became unconscious," and eventually he had to give

19    her CPR. (*Id.*) He later determined that he could not help her, and called the motel office for

20    emergency help. (*Id.*)

21        4.    Respondent affirmatively alleges that Moore had a criminal record prior to his

22    commitment offense. (Ex. B, at pp. 34-35; Ex. F, at pp. 2-3.) In 1967, Moore was arrested, and

23    apparently not convicted of, burglary. (*Id.*) In the same year, Moore was arrested for loitering

24    with the intent to engage in drug-related activity. (*Id.*) The case was dismissed due to a lack of

25    evidence. (*Id.*) A year later, Moore was again arrested for burglary, and the state convicted him

26    of attempted grand theft. (*Id.*) Moore received three years of probation, and served two months

27    in county jail. (*Id.*) In 1971, the conviction was set aside and dismissed pursuant to California

28    Penal Code section 1203.4. (*Id.*) In 1969, Moore was arrested for possession of marijuana, and

Answer to Order to Show Cause; Mem. of P. & A.                    *Moore v. Ayers*
                                                                  C07-3426 JSW

1   the state dismissed the charges. (*Id.*)  In 1971, Moore was arrested for, and convicted of, petty

2   theft. (*Id.*)  He received 90 days in county jail and the conviction was set aside pursuant to

3   California Penal Code section 1203.4. (*Id.*)

4       5.    Respondent affirmatively alleges that Moore maintained an unstable social history

5   prior to his commitment offense, including the use and sale of drugs.  Moore began abusing

6   alcohol at age 16. (Ex. C, at p. 3.)  According to Moore, he began using illegal narcotics around

7   the age of 34 or 35. (Ex. B, at p. 19.)  He started by using crack cocaine. (*Id.* at p. 20.)  His use

8   quickly escalated until he was regularly using, sometimes everyday. (*Id.* at p. 21.)  Moore

9   acknowledges that he was addicted. (*Id.* at p. 17.)  Moore's substance use also included

10  marijuana, LSD, speed, and PCP. (Ex. E, at p. 3.)  Moore stated that at the time of the

11  commitment offense he was not working and he "sometimes" sold drugs to support his crack

12  addiction. (Ex. B, at pp. 14-15.)

13      6.    Respondent affirmatively alleges that at his 2005 parole consideration hearing Moore

14  claimed that the drugs and alcohol he consumed leading up to the argument with Ms. Miller

15  caused him to act in the manner that induced her death. (*Id.* at pp. 30-31.)  Moore stated that he

16  was out of his mind on drugs and outside of himself. (*Id.* at p. 30.)  However, Moore only began

17  sustained involvement in a self-help program for drug use, such as Alcoholics Anonymous, two

18  years and a month before his 2005 parole consideration hearing. (*Id.* at p. 52; Ex. F, at p. 4.)  At

19  his 2005 parole consideration hearing, Moore could recall only one of the twelve steps. (Ex. B,

20  at pp. 52-53.)

21      7.    Respondent affirmatively alleges that Moore attributed his actions to the prolonged

22  drug use leading up to the murder, but failed to appreciate emotional influences, such as rage,

23  anger, and/or jealousy, that contributed to his actions. (*Id.* at pp. 29-30, 50.)  Moore also failed to

24  demonstrate that he can face, discuss, understand, and cope with stress in a nondestructive

25  manner. (*Id.* at pp. 72-73.)  Moore acknowledged that he has discovered that he must "stay away

26  from situations that have any kind of potential for drug use, for violence, anything that has to do

27  with that." (Id. at p. 30.)  However, he failed to discuss that he has learned how to address these

28  situations if, and when, they do arise. (*Id.*)  Furthermore, Moore only recently began to more-

Answer to Order to Show Cause; Mem. of P. & A.                         *Moore v. Ayers*
                                                                       C07-3426 JSW

4

1   seriously participate in self-help and therapy programs, which address these issues. (*Id.* at pp.

2   71-72; Ex. F, at p. 4.)

3       8.   Respondent affirmatively alleges that the San Mateo Police Department and the San

4   Mateo County District Attorney's Office opposed granting Moore parole. (Ex. B, at pp. 44, 64.)

5   Deputy District Attorney Gallagher noted that the toxicology report indicated that Moore had a

6   fairly low level of drugs in his system soon after his arrest. (*Id.* at pp. 60-61.) Deputy District

7   Attorney Gallagher also commented that "there's no indication what would have caused this type

8   of violent rage, and . . . such a violent act by [Moore]." (*Id.* at p. 64.) In his opinion, Moore fails

9   to show insight into the crime and fails to demonstrate that he can handle stress. (*Id.*)

10      9.   Respondent affirmatively alleges that the Board denied Moore parole in his 2005

11  parole consideration hearing. (*Id.* at pp. 69-76.) In denying parole, the Board relied on the

12  commitment offense, Moore's prior criminal record, Moore's unstable social history, including

13  his addiction to crack cocaine, and Moore's limited programming in self-help and therapy

14  programs. (*Id.* at pp. 69-72.) In regards to the first-degree torture killing, the Board noted Moore

15  displayed an exceptionally callous disregard for human suffering. (*Id.* at p. 70.) The Board also

16  noted that the motive for the crime — an argument over drug use — is inexplicable or very

17  trivial in relation to the offense. (*Id.*) Furthermore, the Board recognized that Moore has not

18  sufficiently participated in self-help and therapy programs. (*Id.* at p. 72.) The Board commented

19  that Moore needs therapy in order to face, discuss, understand, and cope with stress in a

20  nondestructive manner. (*Id.* at pp. 72-73.) Lastly, the Board noted that it would prefer Moore to

21  be ranked at a low risk for violence in the community, but that Dr. Rueschenberg found Moore to

22  be a low-to-moderate risk for violence in 2002. (*Id.* at pp. 72, 75; Ex. C, at p. 5.)

23      10.  Respondent admits that Moore filed a habeas petition in the San Mateo County

24  Superior Court raising the same contentions that he alleges here. (Ex. G, Superior Court

25  Petition.) The San Mateo County Superior Court denied the petition in a reasoned decision. (Ex.

26  H, Superior Court Denial.) The superior court held that "[a]fter considering all of this

27  information, as required, the board came to a decision that was proper as there was some

28  evidence in the record to support it." (Ex. H, at p. 4.)

Answer to Order to Show Cause; Mem. of P. & A.                    *Moore v. Ayers*
                                                                 C07-3426 JSW

1     11.   Respondent admits that the California Court of Appeal issued a January 16, 2007

2   denial of Moore's habeas petition. (Ex. I, Appellate Court Denial.) And the California Supreme

3   Court denied Moore's habeas petition on March 27, 2007. (Ex. J, Supreme Court Denial.)

4   Hence, Respondent admits Moore exhausted his state court remedies in regard to the issues

5   currently before this Court. 28 U.S.C. § 2254(b).

6     12.   Respondent denies that the state courts' adjudications of Moore's claims were contrary

7   to, or involved an unreasonable application of, clearly established federal law as determined by

8   the Supreme Court. 28 U.S.C. § 2254(d)(1).

9     13.   Respondent preserves the argument that Moore does not have a federally protected

10  liberty interest in parole. *See Sandin v. Connor*, 515 U.S. 472, 484 (1995) (no federal liberty

11  interest in parole because serving a contemplated sentence does not create an atypical or

12  significant hardship compared with ordinary prison life); *Greenholtz v. Inmates of Neb. Penal &*

13  *Corr. Complex*, 442 U.S. 1, 12 (1979) (liberty interest in conditional parole-release date created

14  by unique structure and language of state parole statute); and *In re Dannenburg*, 34 Cal. 4th

15  1061, 1087 (2005) (California's parole scheme is a two-step process that does not impose a

16  mandatory duty to grant life inmates parole before a suitability finding); *contra Sass v. Cal. Bd.*

17  *of Prison Terms*, 461 F.3d 1123, 1128 (9th Cir. 2006) (holding that California inmates have a

18  federally protected liberty interest in parole date).

19    14.   Respondent affirmatively alleges that Moore had an opportunity to present his case to

20  the Board, and the Board provided him with a detailed explanation for its parole denial. Thus,

21  Moore received all process due under *Greenholtz*, the only clearly established federal law

22  regarding due process rights of inmates at parole hearings.

23    15.   Respondent affirmatively alleges that the Board's decision is supported by some

24  evidence. However, notwithstanding the Ninth Circuit's contrary decision in *Irons v. Carey*, 505

25  F.3d 846, 851 (9th Cir. 2007), Respondent denies that the Supreme Court has ever clearly

26  established that a state parole board's decision must be supported by some evidence.

27    16.   Respondent affirmatively alleges that federal due process does not preclude the Board

28  from relying on immutable factors to deny parole. *Sass*, 461 F.3d at 1129. Therefore, Moore's

Answer to Order to Show Cause; Mem. of P. & A.                                    *Moore v. Ayers*
                                                                                 C07-3426 JSW

1  claim — alleging that the Board's reliance on the commitment offense and pre-commitment

2  factors violated his due process rights — fails under AEDPA because the San Mateo County

3  Superior Court's decision to deny the same claim was not contrary to, and did not involve an

4  unreasonable application of, clearly established United States Supreme Court law.

5       17.   Respondent denies that the Board ignored or failed to consider evidence tending to

6  show Moore's parole suitability. Respondent further denies that Moore maintains a clearly

7  established federal right to have the Board consider or acknowledge all factors indicative of his

8  suitability for parole. California law requires the Board to consider "[a]ll, reliable information

9  available . . ." Cal. Code Regs. tit. 15, § 2402(b). However, Moore has presented no evidence

10  that the Board failed to consider relevant information. Moreover, mere violations of state law are

11  not cognizable under federal habeas law. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991).

12       18.   Respondent affirmatively alleges that Moore fails to maintain a clearly established

13  federal right with regard to California's matrix of suggested base terms. Furthermore,

14  Respondent denies that the Board's application of the matrix violates Moore's due process rights.

15  California's parole regulations contain a matrix of suggested base terms that prisoners with life

16  sentences should serve before released on parole. *See* Cal. Code Regs. tit. 15, § 2282. However,

17  under California law, an inmate's base term can be set only after the Board finds the inmate

18  suitable for parole, because the statutory scheme places individual suitability for parole above a

19  prisoner's expectancy in an early release date. *Dannenberg*, 34 Cal. 4th at 1070-71.

20       19.   Respondent denies that clearly established federal law requires an inquiry into whether

21  Moore's commitment offense is more violent or vicious than the minimum elements necessary

22  for a conviction. Respondent denies that clearly established federal law requires comparing

23  Moore's offense to offenses described in published cases.

24       20.   Respondent affirmatively alleges that Moore's argument — that the Board presented

25  no evidence showing he was an unreasonable risk to society if released — fails under AEDPA

26  because the San Mateo County Superior Court's decision to deny this claim was not contrary to,

27  and did not involve an unreasonable application of, clearly established United States Supreme

28  Court law. Moreover, clearly established California law does not require a judicial review

Answer to Order to Show Cause; Mem. of P. & A.                                    *Moore v. Ayers*
                                                                                  C07-3426 JSW

1  requiring some evidence to support that the inmate poses a current risk to society if released. *In*

2  *re Rosenkrantz*, 29 Cal. 4th 616, 658 (2002).

3      21.  Respondent admits Moore's claims are timely under 28 U.S.C. § 2244(d)(1) and that

4  the Petition is not barred by any other procedural defenses.

5      22.  Respondent denies that an evidentiary hearing is necessary in this matter.

6      23.  Respondent affirmatively alleges that Moore fails to establish any grounds for federal

7  habeas relief.

8      24.  Except as expressly admitted above, Respondent denies, generally and specifically,

9  each allegation of the petition, and specifically denies that Moore's administrative, statutory, or

10  constitutional rights have been violated in any way.

11      Accordingly, Respondent respectfully requests that the Court deny the Petition for writ of

12  habeas corpus and dismiss these proceedings.

13

14              **MEMORANDUM OF POINTS AND AUTHORITIES**

15                            **ARGUMENT**

16  **THE STATE COURT'S DENIAL OF MOORE'S HABEAS CLAIM WAS**
    **NEITHER CONTRARY TO, OR AN UNREASONABLE APPLICATION**
17  **OF, CLEARLY ESTABLISHED FEDERAL LAW, NOR BASED ON AN**
    **UNREASONABLE DETERMINATION OF THE FACTS.**
18

19      The Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) modified "the role

20  of federal habeas courts in reviewing petitions filed by state prisoners by placing a new constraint

21  on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas

22  corpus with respect to claims adjudicated on the merits in state court." *Williams v. Taylor*, 529

23  U.S. 362, 412 (2000).  Under AEDPA, a federal court may grant a writ of habeas corpus on a

24  claim that a state court already adjudicated on the merits *only if* the state court's adjudication was

25  either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal

26  law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable

27  determination of the facts in light of the evidence presented at the State Court proceeding." 28

28  U.S.C. § 2254(d)(1-2).

Answer to Order to Show Cause; Mem. of P. & A.

1    Here, the San Mateo County Superior Court decision denying Moore's claim for habeas

2    relief was neither contrary to, or an unreasonable application of, federal law.[2]  In addition, the

3    state superior court's decision was not based on an unreasonable determination of the facts in

4    light of the evidence presented.  Therefore, Moore fails to establish a violation of AEDPA

5    standards, and the state court's decision denying habeas relief must stand.

6

7    **A.    The San Mateo County Superior Court Decision Was Not Contrary to Clearly Established Federal Law.**

8    Under the first AEDPA standard, a federal court may grant habeas relief if the state court

9    decision was contrary to, or an unreasonable interpretation of, clearly established federal law as

10    determined by the Supreme Court of the United States.  Here, Moore received all process due

11    under *Greenholtz*, the only clearly established federal law regarding the due process rights of an

12    inmate at a parole-consideration hearing.

13

14    **1.    Moore received all process due under the only United States Supreme Court law addressing due process in the parole context.**

15    In *Greenholtz*, the United States Supreme Court established the due process protections

16    required in a state parole proceeding.  The Court held that the only process due at a parole

17    consideration hearing is an opportunity for the inmate to present his case, and an explanation for

18    a parole denial.  *Greenholtz*, 442 U.S. at 16.

19    Moore received both of these protections at his 2005 parole consideration hearing.  (See

20    generally Ex. B.)  Therefore, the state court's adjudication of his habeas claim did not violate

21    clearly established Supreme Court precedent.  Accordingly, Moore's claim fails under AEDPA.

22

23    **2.    The Ninth Circuit's some-evidence test is not clearly established Supreme Court law.**

24    Moore challenges the sufficiency of the evidence the Board relied on in its decision.  While

25

26

27    2.  When, as here, the California Supreme Court denies a habeas petition without comment, the federal court will look to the last reasoned decision as the basis for the state court's judgment.  *Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991).  In this case, the San Mateo County Superior Court rendered the last reasoned decision.  (Ex. H.)

28

Answer to Order to Show Cause; Mem. of P. & A.                    *Moore v. Ayers*
C07-3426 JSW

1     California law requires a reviewing court to apply the some-evidence standard of review, *In re*

2 *Rosenkrantz*, 29 Cal. 4th 616, 658 (2002), the some-evidence test should not apply to a federal

3 habeas proceeding challenging a parole denial because the Supreme Court has never done so.

4     The United States Supreme Court recently reiterated that for AEDPA purposes, "clearly

5 established federal law" refers only to the holdings of the nation's highest court on the specific

6 issue presented. *Carey v. Musladin*, __ U.S. __, 127 S. Ct. 649, 653 (2006). In *Musladin*, the

7 Ninth Circuit held that under clearly established federal law courtroom spectators who wore

8 buttons depicting the victim in a murder trial inherently prejudiced the defendant and denied him

9 a fair trial. *Id.* at 652. In vacating the Ninth Circuit's decision, the Supreme Court explained that

10 the two Supreme Court cases that the Ninth Circuit relied on — one involving a defendant who

11 was required to wear prison clothing during trial and the other concerning a defendant who had

12 four uniformed troopers placed behind him at trial — involved state-sponsored courtroom

13 practices that were unlike the private conduct of the victim's family. *Id.* at 653-54. As a result,

14 the Court held that "given the lack of applicable holdings from [the Supreme Court], it could not

15 be said that the state court 'unreasonably appl[ied] . . . clearly established Federal law.'" *Id.* at

16 653-54.

17     Similarly, the Supreme Court found in *Schriro v. Landrigan*, __ U.S. __, 127 S. Ct. 1933,

18 1942 (2007), that a federal habeas petitioner maintained no claim under AEDPA because

19 Supreme Court precedent finding ineffective assistance of counsel when an attorney fails to

20 adequately investigate mitigating evidence is factually distinct from a defense attorney failing to

21 investigate mitigating evidence after the client demonstrates a reluctance to assist the

22 investigation. Consequently, the Supreme Court indicated that circuit courts may not import —

23 under the guise of "clearly established federal law" — a federal standard used in one context to a

24 different factual circumstance. *Id.*; *see also Musladin*, 127 S. Ct. at 653-54.[3]

25 _____

26     3. Likewise, the Ninth Circuit has recently affirmed this principle in a number of cases. *See*

27 *e.g.*, *Foote v. Del Papa*, 492 F.3d 1026, 1029 (9th Cir. 2007) (affirming district court's denial of habeas claim alleging ineffective assistance of appellate counsel based on an alleged conflict of interest because the Supreme Court has never held — even though the Ninth Circuit has — that such

28 an irreconcilable conflict violates the Sixth Amendment); and *Nguyen v. Garcia*, 477 F.3d 716 (9th

1     Despite the Supreme Court's guidance in this area, the Ninth Circuit continues to extend the

2 *Hill* some-evidence standard of review — a Supreme Court holding applicable to prison

3 disciplinary hearings — to habeas petitions challenging denials of parole. *Sass v. Cal. Bd. of*

4 *Prison Terms*, 461 F.3d 1123 (9th Cir. 2006) (referencing *Superintendent v. Hill*, 472 U.S. 445

5 (1985) — a prison disciplinary case — for proposition that Board's denial of parole requires

6 some evidence); *Irons v. Carey*, 505 F.3d 846 (9th Cir. 2007) (pet. for reh'g en banc denied).

7     Furthermore, *Greenholtz*, the only Supreme Court decision concerning the due process

8 rights of an inmate in the parole context, specifically recognized the procedural distinction

9 between the government denying an inmate parole and the government determining guilt by way

10 of an adversarial proceeding. *Greenholtz*, 442 U.S. at 15-16. Based on this distinction, the

11 Supreme Court determined that a denial of parole only requires the state to provide an

12 opportunity for the inmate to present his case and an explanation for the parole denial — not

13 additional protections, such as those in an adversarial proceeding. *Id.* (reasoning that "to require

14 the parole authority to provide a summary of the evidence would convert the [parole-

15 consideration] process into an adversary proceeding and to equate the Board's parole release

16 determination with a guilt determination").

17     As a result, for AEDPA purposes, the *Hill* some-evidence standard of review required for

18 prison *disciplinary* hearings should not apply to a federal-habeas proceeding challenging a parole

19 denial. However, Respondent recognizes that the Ninth Circuit has held otherwise and will argue

20 this case accordingly.

21       **3.**    **Even if the some-evidence standard were clearly established federal**
              **law, the San Mateo County Superior Court correctly applied this**
22               **standard.**

23     Assuming the some-evidence test is clearly established Supreme Court law for parole

24 denials, Moore's claim fails under AEDPA because the state court's decision was not contrary to,

25 and did not involve an unreasonable application of, the some-evidence requirement.

26

27 Cir. 2007) (holding that because the Supreme Court had not extended a defendant's right to counsel
— established in *Wainwright v. Greenfield*, 474 U.S. 284 (1986) — to a competency hearing, federal

28 law was not clearly established for AEDPA purposes).

Answer to Order to Show Cause; Mem. of P. & A.                               *Moore v. Ayers*
                                                                          C07-3426 JSW

1    California law requires that some evidence support the Board's decision to deny parole.

2  *Rosenkrantz*, 29 Cal. 4th at 616.  Here, the San Mateo County Superior Court applied this some-

3  evidence standard in reviewing the Board's 2005 decision denying Moore parole.  (Ex. H, at p.

4  4.)  As a result, the state court's decision was not contrary to federal law, because the San Mateo

5  County Superior Court *did* apply the some-evidence standard.  (*Id.*)

6    Additionally, the San Mateo County Superior Court decision was not "an unreasonable

7  application of" the some-evidence standard of review.  The some-evidence standard "does not

8  require examination of the entire record, independent assessment of the credibility of the

9  witnesses, or weighing of the evidence;" rather, it is satisfied if there is "any evidence in the

10  record that could support the conclusion reached by the [B]oard."  *Hill*, 472 U.S. at 455-57; *see*

11  *also Sass*, 461 F.3d at 1129 (stating that "*Hill's* some evidence standard is minimal").

12    Indeed, the facts support the Board's reliance on the circumstances of the first-degree,

13  torture murder.  The Board noted that Moore displayed an exceptionally callous disregard for

14  human suffering.  (Ex. B, at p. 70 [relying on Cal. Code Regs. tit. 15, 2402, subd. (c)(1)(C)].)

15  Specifically, the Board relied on the fact that Moore brutally beat the victim, his girlfriend, over a

16  long period of time.  (*Id.* at pp. 59-60.)  Witnesses heard loud noises and screaming coming from

17  their motel room, and described the incident as loud and vicious.  (Ex. C, at pp. 2, 5.)  Moore

18  also strangled the victim with his hands.  (Ex. B, at pp. 49, 58.)  During Moore's long and brutal

19  assault, Moore inflicted serious head injuries upon Ms. Miller.  (Ex. C, at p. 4.)  She incurred

20  bruises all over her body, and eventually died of a massive brain injury.  (Ex. E, at p. 4; Ex. C, at

21  p. 4.)

22    The Board also found that the motive of the crime was inexplicable or very trivial in relation

23  to the offense.  (Ex. B, at p. 70 [relying on Cal. Code Regs. tit. 15, 2402, subd. (c)(1)(D)].)  The

24  Board supported its finding, noting Moore's explanation for the argument that led to Ms. Miller's

25  death — her use of their drugs while with other people and away from the motel room.  (*Id.* at

26  pp. 70, 13, 30-31.)

27    Additionally, the Board relied on other factors to deny parole, such as Moore's prior

28  criminal record, Moore's unstable social history, and Moore's limited programming in self-help

1  and therapy programs. (*Id.* at pp. 69-72.) The record contains evidence supporting these findings

2  as well.

3      For instance, Moore acknowledged his crack-cocaine addiction and substance abuse

4  problems. (*Id.* at pp. 16, 19-21, 34-35.) However, he began attending substance-abuse classes

5  only two years and a month before his 2005 hearing. (*Id.* at pp. 52, 62; Ex. F, at p. 4.) Relative

6  to his incarceration period, this is a short duration of time to address his addiction problems. (*Id.*

7  at p. 62.) Furthermore, Moore's failure to remember the twelve steps of recovery, addressed in

8  the Alcoholics Anonymous Program he attended, demonstrates that he requires additional self-

9  help programming. (*Id.* at pp. 52-53.)

10      Additionally, the record supports the Board's finding that Moore needs additional self-help

11  programs to cope with stress in a nondestructive manner. (*Id.* at p. 72-73.) While Moore

12  acknowledged that he must "stay away from situations that have any kind of potential for drug

13  use, for violence, [or] anything that has to do with that," he failed to demonstrate that he has

14  learned how to address stressful situations if, and when, they do arise outside of the prison

15  setting. (*Id.* at p. 30.) Indeed, one cannot merely "stay away" from such situations when released

16  to society at large, a less-regulated environment. Additionally, Moore attributed his crack-

17  cocaine use as the cause of his violence toward the victim. (*Id.* at pp. 30-31.) Yet, he failed to

18  acknowledge that his actions contained an emotional element, or that he has learned to control

19  those emotions. (*Id.* at pp. 30-31, 50.)

20      In summary, the Board identified several reasons why the state should not parole Moore.

21  Every reason contained factual support within the record. As a result, some evidence supports

22  the Board's decision to deny parole. Therefore, the state court's decision did not involve an

23  unreasonable application of the some-evidence standard, and Moore's claim fails under AEDPA.

24          **4.    The Board may rely on static factors to deny parole.**

25      Moore alleges that the Board violated his due process rights by relying on "unchanging

26  factors of the crime and precommitment [sic] behavior." (Pet. at p. 1.) Moore's claim fails for

27  several reasons.

28      First, there exists no clearly established federal law as determined by the United States

1  Supreme Court that prohibits the Board's ability to rely on static factors in denying parole. Thus,

2  Moore fails to establish a claim under AEDPA.

3  Secondly, the San Mateo County Superior Court specifically addressed Moore's due process

4  argument based on the Board's reliance on the offense and pre-commitment conduct. (Ex. H, at

5  p. 5.) The superior court decision analyzed Ninth Circuit dicta and determined that Moore "has

6  not demonstrated facts sufficient to show that the denial in his case rises to the level of a due

7  process violation." (Id. [applying Biggs v. Terhune, 334 F.3d 910, 916-917 (9th Cir. 2003)].) As

8  a result, the state court's decision was not an "unreasonable application" of Ninth Circuit

9  precedent, much less Supreme Court law.

10  Third, California Penal Code section 3041, subdivision (b), requires that the Board examine

11  the commitment offense, as the Board "shall set a release date unless it determines that the

12  gravity of the current offense or offenses, is such that consideration of the public safety requires a

13  more lengthy period of incarceration." Indeed, the California Supreme Court held in

14  Dannenberg, 34 Cal. 4th at 1094, that the Board may rely solely on the circumstances of the

15  commitment offense. Furthermore, California Code of Regulations, title 15, section 2402(b),

16  requires the Board to consider "[a]ll relevant, reliable information" which includes the base and

17  other commitment offenses. Therefore, California law not only permits the Board's reliance on

18  the commitment offense, it mandates that the Board examine the facts of the crime.

19  Lastly, the Board did not base its decision merely on the static factors, but also relied on

20  behavioral and competency issues, such as Moore's ability to properly cope with stress. (Ex. B,

21  at pp. 71-73.) These are issues Moore may remedy through self-help programming.

22  Consequently, Moore's argument that the Board violated his due process rights by using

23  static factors to support the parole denial is without merit. Neither federal law nor California law

24  dictates that the Board cannot rely on static factors. Regardless, the Board's decision did not

25  solely rely on immutable considerations. Accordingly, Moore's claim fails under AEDPA

26

27  **B.    The San Mateo County Superior Court Decision Upholding the Board's
       Parole Denial Reasonably Determined the Facts.**

28  Under the second AEDPA standard, a federal court may grant habeas relief if the

Answer to Order to Show Cause; Mem. of P. & A.                                    Moore v. Ayers
                                                                                 C07-3426 JSW

1  state court decision was based on an unreasonable determination of the facts in light of

2  the evidence presented at the State Court proceeding.  28 U.S.C. § 2254(d)(2).  AEDPA

3  also requires federal habeas courts to presume the correctness of state courts' factual

4  findings unless a petitioner rebuts this presumption with "clear and convincing evidence."

5  28 U.S.C. § 2254(e)(1).

6      Here, the San Mateo County Superior Court based its determination of the facts on a

7  review of Moore's habeas petition, which contained the transcript for the 2005 parole

8  consideration hearing.  (Ex. H, at p.1; Ex. G, at ex. A.)  The Board's determination of the

9  facts concerning the commitment offense, and other relevant factors, relied on Moore's

10  testimony and the documents in his central file, such as his 2005 Life Prisoner Evaluation

11  Report, his Probation Officer's Report, and his 2002 Mental Health Evaluation.  (See

12  generally Ex. B.)

13      Accordingly, the state court reasonably determined the facts in light of the evidence

14  presented.  Furthermore, Moore fails to provide this Court with clear and convincing

15  evidence to the contrary.  Therefore, Moore cannot demonstrate a basis for relief under

16  the second AEDPA standard.

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

Answer to Order to Show Cause; Mem. of P. & A.

*Moore v. Ayers*
C07-3426 JSW

## CONCLUSION

Moore fails to demonstrate a basis for relief under AEDPA's two standards permitting a habeas remedy after a state court has already adjudicated the same issue. Under the first standard, the San Mateo County Superior Court's adjudication of Moore's claim was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Moore received all process required under *Greenholtz*, and — although not clearly established federal law — the some-evidence test was nonetheless applied by the state court. Under the second AEDPA standard, Moore fails to show that the San Mateo County Superior Court decision was based on an unreasonable determination of the facts. Rather, the 2005 parole hearing transcript, 2005 Life Prisoner Evaluation Report, the Probation Officer's Report, and the 2002 Mental Health Evaluation support the state court's factual interpretation. Therefore, Respondent respectfully requests that Moore's habeas petition be denied.

Dated:  January 28, 2008

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

JULIE L. GARLAND
Senior Assistant Attorney General

ANYA M. BINSACCA
Supervising Deputy Attorney General

/S/  BRIAN C. KINNEY
BRIAN C. KINNEY
Deputy Attorney General
Attorneys for Respondent

AnswerMoore.wpd
SF2007200880

Answer to Order to Show Cause; Mem. of P. & A.

*Moore v. Ayers*
C07-3426  JSW

16

## DECLARATION OF SERVICE BY U.S. MAIL

Case Name:   **Ronald D. Moore v. Robert L. Ayers, Jr., Warden**

Case No.:    **C07-3426 JSW**

I declare:

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar, at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. I am familiar with the business practice at the Office of the Attorney General for collection and processing of correspondence for mailing with the United States Postal Service. In accordance with that practice, correspondence placed in the internal mail collection system at the Office of the Attorney General is deposited with the United States Postal Service that same day in the ordinary course of business.

On **January 28, 2008**, I served the attached

**ANSWER TO THE ORDER TO SHOW CAUSE; MEMORANDUM OF POINTS AND AUTHORITIES**

by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the internal mail collection system at the Office of the Attorney General at 455 Golden Gate Avenue, Suite 11000, San Francisco, CA 94102-7004, addressed as follows:

Ronald D. Moore (D-92538)
San Quentin State Prison
San Quentin, CA 94974
In Pro Per

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on **January 28, 2008**, at San Francisco, California.

|                           |                           |
| ------------------------- | ------------------------- |
| R. Panganiban             | /S/R. Panganiban          |
| Declarant                 | Signature                 |

40210900.wpd