# EXHIBIT  C

MENTAL HEALTH EVALUATION
FOR THE BOARD OF PRISON TERMS
MAY 2002 CALENDAR
LIFER PROGRAM UNIT
SAN QUENTIN STATE PRISON


PSYCHOSOCIAL ASSESSMENT


**IDENTIFYING INFORMATION:** Mr. Ronald Moore, CDC# D-92538, is a 53-year-old, separated, African American first-termer committed from San Mateo County. He is serving a 25-year-to-life sentence for First Degree Murder. The index offense occurred on 11-10-86, and Mr. Moore entered into CDC at Vacaville on 8-5-88. He arrived at San Quentin on 8-31-93. He is a United States citizen.

Informed consent, including the limits of confidentiality, was provided. Mr. Moore appeared to comprehend both the nature and purpose for the present evaluation, and he agreed to participate in the interview. Mr. Moore does not appear to have a mental disability or condition that would qualify under the Americans with Disabilities Act, and it was my conclusion that it was not necessary to provide auxiliary aids or assistance to achieve effective communication. The interview was conducted on 4-29-02, lasting approximately one and one-half hours. Both the Central file and Unit Health Record were reviewed.

**DEVELOPMENTAL HISTORY:** Mr. Moore was born in Sacramento, CA. His developmental history appears to be unremarkable. There were no indications of prenatal and perinatal concerns, or birth defects. There were no signs of developmental abnormalities. It appears that he was able to attain developmental milestones at the appropriate ages and in the expected sequence. He was not diagnosed as hyperactive and his childhood medical history is unremarkable. There does not seem to be a history for childhood abuse, although he mentioned that he was given spankings for misbehavior.

It appears the Mr. Moore manifested only minor adjustment problems in childhood and early adolescence. His first contact with law enforcement was at the age of 16 or 17.

**EDUCATION:** Mr. Moore attended elementary and junior high school in the Sacramento area. He claimed that he received good grades, and there were no disciplinary problems. He graduated from Grant High School in Sacramento in 1967 with a B average. He informed the examiner that he was suspended on one occasion for one to three days for arguing with a teacher. He stated that he briefly attended American River College, but did not receive any credits. He claimed that he generally related well with teachers and other students. He stated, "I liked to clown a lot...I could have done better."

His TABE test from the Institutional Staff Recommendation Summary Report (ISRS) dated 8-15-88 indicates a 12.9 grade placement level. He claimed that he is currently enrolled in the Patten College correspondence course, and he expressed an interest in eventually obtaining his BA in counseling.

**FAMILY HISTORY:** Mr. Moore was raised in an intact family, with one older brother. The record indicates that his father was an alcoholic. He previously reported that the happiest times in his family were when his father was "passed out." In the present interview, he revealed that there were arguments between his parents and occasional episodes of domestic violence. He described his family environment as "a sound Christian home, " while acknowledging that his father was "not much of a positive influence." He mentioned that he was close to his mother's side of the family. He left home shortly after graduating from high school.

In the present interview, Mr. Moore reported that his father died sometime in the mid-1970's from problems emanating from either his smoking or drinking. Mr. Moore reported that his mother, Evelyn Moore, is in her 80's and is currently receiving home health care services for medical problems. His older brother, Willie (63), works in the computer field, and was previously listed as a data processor. His family history is negative for drug abuse, legal problems and mental disorders. There is a family history for alcoholism and hypertension.

Currently, Mr. Moore has contact with his mother, brother and a nephew.

**PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:** Mr. Moore identified himself as exclusively heterosexual. He estimated that he reached puberty at age 13 or 14, and he became sexually active at age 15. He denied any interest in non-normative sexual behaviors or fantasies, and there are no reported sex crimes. He estimated that he has had sexual relations with 5-7 different partners, within the context of relationships. He denied having sex with prostitutes or contracting a sexually transmitted disease.

**MARITAL/RELATIONSHIP HISTORY:** Mr. Moore reported he was married to Avis Smith Moore in 1968. This marriage produced a daughter, Ronni, and a son, Michael. His record indicates that the couple separated in 1978. In the present interview, he purported that he and his wife were actually only together for 5-6 years, and they have remained separated since that time. Mr. Moore stated that he has not had any contact with either his ex-wife or children during the last year. He reported that Ronni has a son and is living in a different state, and Michael also has one child.

Mr. Moore also had a one-year live-in relationship with Claire Miller, the victim in the index offense. He contended that there were no other episodes of domestic violence preceding the index offense. However, the record indicates that when examined after the offense, the victim had older bruises that were visible on various parts of her body.

**MILITARY HISTORY:** There is no record of military service.

**EMPLOYMENT/INCOME HISTORY:** Mr. Moore informed the examiner that he has employment experience in the community in the areas of computer operations, data entry and customer service. According to the San Mateo Probation Officer's Report (POR) dated 8-1-88, Mr. Moore had been unemployed several months when the offense occurred. It was noted that he had been working for a temporary employment agency.

In the present interview, Mr. Moore admitted that he had employment problems and at one point he was employed for three months. He denied having participated in criminal activities for income.

In prison, Mr. Moore has worked primarily in clerical positions. His work supervisor's report from 6-4-01 for PIA Quality Control indicated superior ratings with the supervisor commenting "overall exceptional."

**SUBSTANCE ABUSE HISTORY:** Mr. Moore has a significant substance abuse history. He informed the examiner that he started abusing alcohol regularly at the age of 16. His substance use has also included marijuana and cocaine. He stated that he experimented briefly with heroin and amphetamines. According to the POR he also used PCP. He acknowledged that his drug and alcohol use had a detrimental impact on his life. He told the examiner that when the index offense occurred, he and the victim were bingeing on alcohol and cocaine and had not slept for several days.

Mr. Moore related that he was not in any substance abuse programs in the community. In prison, he has been participating in self-help groups through the chapel, but he is not in 12-Step or any other recovery program.

**MENTAL HEALTH AND MEDICAL HISTORY:** Mr. Moore does not have a mental health history, either in prison or the community. He informed the examiner that there is no history for head injury, seizures or other neurological conditions. There is no reported suicide history. He has been maintained in GP placement throughout his incarceration.

Mr. Moore does not seem to have any major medical problems.

**PLANS IF GRANTED RELEASE:** Mr. Moore reported that if he were released from prison, he would live either with his mother, nephew or brother. He stated that he would seek employment in the areas of data entry, customer service or Biblical counseling. He expressed an interest in working at a Christian residential program.

At present, Mr. Moore seems to have a rather general and somewhat vague parole plan. Also, he does not appear to have any specific strategies for relapse prevention. His prognosis for community living is guarded.

## CLINICAL ASSESSMENT

**CURRENT MENTAL STATUS/TREATMENT NEEDS:** Mr. Moore arrived for the interview promptly and he was appropriately groomed and dressed. He had a shaved head and a closely trimmed mustache. His demeanor was mild-mannered and easygoing. He was alert and well oriented in the three spheres. His speech was normal, and his responses were well articulated. His mood was euthymic and affect was broad and appropriate. He did not endorse any primary symptoms of depression or hypomania. His thinking was well integrated and purposeful. There were no indications of paranoid ideation. Memory and concentration were intact. Judgment was questionable, and insight was only partial. He denied any thoughts or intentions of harm to self or others.

**DIAGNOSTIC IMPRESSION:**

| | | |
|---|---|---|
| Axis I: | 304.8 | Polysubstance Dependence, in Full Remission in a Controlled Setting |
| Axis II: | 799.9 | Diagnosis on Axis II Deferred |
| Axis III: | None | |
| Axis IV: | Incarceration | |
| Axis V: | GAF=85 | |

Currently, Mr. Moore does not seem to have a mental disorder and he is not in need of mental health services.

**CRIMINAL HISTORY/REVIEW OF LIFE CRIME:** As illustrated above, Mr. Moore had only minor adjustment difficulties during adolescence. There is no reported juvenile crime history. His criminal record includes two prior convictions. In 1968 he was convicted for attempted burglary and sentenced to two months in county jail and three years probation. In 1971 he was convicted for petty theft and given a suspended sentence.

The index offense is described in detail in the POR. Briefly stated, Mr. Moore and his live-in girlfriend were staying at a motel. He called the motel office, sounding distraught and requesting emergency assistance. When the police arrived they found the victim unconscious, having apparently been beaten. She was transported to nearby hospital where she died from a massive brain injury. Mr. Moore initially claimed that he left the motel room while the victim was prostituting, and he returned to find her severely beaten. However, he later changed his account, admitting that he and his girlfriend had been using cocaine when they started arguing about the victim providing sex to other men in exchange for cocaine. The argument allegedly escalated into a physical altercation. During the altercation, the victim sustained serious head injuries.

In the present interview, Mr. Moore tearfully recounted the events that led to his murdering his girlfriend. He stated that the two were on a "run," using cocaine and alcohol almost continuously and being up for five days. He related that they were

"having a pretty good time off and on" until the last day when they argued about "drugs and other lovers." He reported that they started pushing and shoving each other and then they exchanged blows. He stated, "It was a small hotel room and I pushed her and she hit her head on something...either a dresser or the TV...then she went down...she was rendered unconscious by me and I attempted to revive her...I called for help and when I left she was still breathing...I found out later she passed." He explained that since the victim had old bruises on her body, the court viewed the offense as murder by torture. He also mentioned that witnesses testified that they heard loud noises and fighting and described the offense as a "bad and vicious." He accepted full responsibility for the crime and he described the victim as "a good person, but sometimes feisty."

**RISK FOR VIOLENCE:** The current research supports that empirically based risk assessment procedures are the most accurate and valid method for estimating future risk for violence in the community. In the present evaluation, three different psychological instruments were employed to assess future risk for violence in the community.

On the Hare Scale (PCL-R), a measure of static risk factors associated with risk for violence, Mr. Moore scored within the low range of severity. This score indicates that he does not have a prominent criminal orientation and he does not fit the clinical picture of a psychopathic personality. Since this instrument is based on static factors, it is not likely that his score would change substantially over time.

On the History Clinical Risk-20 (HCR-20), which also includes dynamic risk factors, Mr. Moore scored within the moderate range of severity. As mentioned above, he started to manifest adjustment problems in late adolescence that continued into adulthood. In addition to his aforementioned substance problem, he had difficulty in relationships and maintaining employment.

On the Violence Risk Appraisal Guide (VRAG), an actuarial method, Mr. Moore scored within the low range.

**CONCLUSION:** Overall, Mr. Moore appears to have a low-to-moderate risk for violence in the community. At the time of the index offense, his criminal record was minor, and he had no violent offenses. However, he was heavily immersed in cocaine use and the drug subculture. According to the POR, he was financially supported by the victim, and while she was at work he rented out their room to drug users. It appears that his life was headed in a downward spiral. In the present interview, he seemed to have difficulty identifying the factors that contributed to the crime.

His institutional adjustment in prison has been very favorable. He has exhibited a prosocial orientation, resuming his college education and receiving exceptional ratings from his supervisors for his work performance. He has not received any CDC-115's. He has also been an active participant in religious activities. He seems to be demonstrating a level of maturity and motivation that was lacking at the time of his offense.

Of primary concern is his lack of participation in recovery programming, especially considering the circumstances of his crime. He also needs to formulate a more complete parole plan that includes strategies for relapse prevention.

_Erich Rueschenberg_

_____          May 7, 2002
Erich Rueschenberg, Ph.D.                   Date
Forensic Psychologist
Lifer Program/Forensic Services Unit
Health Care Services Division
California Department of Corrections