RONALD j. MOORE
D-92538, 2N-9θ LOW
SAN QUENTIN STATE PRISON
SAN QUENTIN, CA 94974



# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| **RONALD J. MOORE,** | ) | No. C07-3426 JSW |
| | ) | |
| Petitioner, | ) | **TRAVERSE TO THE** |
| | ) | **ANSWER TO PETITION FOR** |
| | ) | **WRIT OF HABEAS CORPUS;** |
| **v.** | ) | **MEMORANDUM OF POINTS** |
| | ) | **AND AUTHORITIES** |
| **ROBERT AYERS, JR., Warden,** | ) | |
| | ) | Judge: The Honorable Jeffrey S. White |
| Respondent. | ) | |
| | ) | |

As a Traverse to the Answer to the Petition for Writ of Habeas Corpus, Petitioner
Ronald D. Moore ("Petitioner"), alleges as follows:

1.   Petitioner agrees with the allegations in paragraph 1, but denies that his
     continued incarceration is lawful.

2.   Petitioner agrees with the allegation in Paragraph 2.

3.   For the purpose of these proceedings, Petitioner agrees with the allegation in
     Paragraph 3, but denies that the Board's conclusion and findings had any

1.

evidentiary support that he currently poses an unreasonable threat to the public if released from prison.

4.   Petitioner agrees with the allegations in Paragraph 4 but denies that the information relied upon by the Board was accurate in all its details, and pre-conviction behavior no longer provides any predictive value of current dangerousness.

5.   Petitioner admits the allegations in Paragraph 5.

6.   Petitioner denies that the Board gave him individualized consideration at the 2005 hearing. The Board ignored or minimized the overwhelming evidence in favor of suitability and instead relied on the commitment offense and over two decade old behavior to deny petitioner parole. The Board acted in conformity with a sub rosa policy and practice of using the crime itself to deny parole.

7.   Petitioner admits in part the allegations in Paragraph 7 that prolong use of drugs and alcohol attributed to his actions, but denies that he fails to appreciate emotional influences, such as rage, anger, and/or jealousy, that contributed to his actions, Petitioner has not failed to demonstrate that he can face, discuss, understand, and cope with stress in a nondestructive manner. This allegation is ridiculous in light of the fact of Petitioner's exemplary behavior while incarcerated and the programs that he has completed while in prison, no matter how recent.

8.   Petitioner admits the allegations in Paragraph 8.

9.   Petitioner admits the allegations in Paragraph 9.

10.  Petitioner agrees with the allegations in Paragraph 10.

2.

11.     Petitioner agrees with the allegation in Paragraph 11.

12.     Petitioner denies the allegation in Paragraph 12 that the state court's
        adjudication of Petitioner's claims were not contrary to, or involved an
        unreasonable application of, clearly established federal law as determined by
        the Supreme Court. 28 U.S.C. § 2254(b).

13.     Petitioner asserts that he has a federally protected liberty interest in parole.
        See Sass v. Cal. Bd. of Prison Terms, 461 F. 3d 1123, 1128 (9th Cir. 2006).

14.     Petitioner asserts that he enjoys federal due process protections beyond the
        minimal protections due under Greenholtz. Petitioner asserts that numerous
        U.S. Supreme court cases require that a decision by a government official not
        be arbitrary or capricious. Moreover, the minimum standards for due process
        require more than compliance with the "some evidence" standard. See
        Edwards v. Balisok, 520 U.S. 641 (1997).

15.     Petitioner denies the allegations et forth in Paragraph 15 and asserts that the
        Board engaged in an arbitrary determination that his commitment offense was
        particularly egregious and that the decision denying him parole was not
        supported by any evidence that he was currently dangerous.

16.     Petitioner claims that he was denied equal protection because the Board
        denied him parole solely because his commitment offense was murder.

17.     Petitioner denies the allegations in Paragraph 17.

18.     Petitioner denies the allegations set forth in Paragraph 18.

19.     Petitioner denies the allegation set forth in Paragraph 19.

20.     Petitioner denies the allegation set forth in Paragraph 20.

3.

21.    Petitioner agrees with paragraph 21.

22.    Petitioner claims that an evidentiary hearing is necessary because there are

factual findings in dispute and the State's factual findings are not binding on

federal habeas corpus. See Taylor v. Maddox, 366, F. 3d 992, 1001 (9th Cir.

2004). Petitioner has established a colorable claim for relief in citing the

Board's arbitrary practice of characterizing virtually every crime as

exceptional. Earp. v. Ornoski, 432 F. 3d 1158, 1167 (9th Cir. 2005)

23.    Petitioner asserts that he has established grounds for federal habeas relief.

24.    Except as expressly admitted above, Petitioner denies generally and

specifically each and every allegation in the Answer, and specifically asserts

that his administrative, statutory and constitutional rights have been violated.

For the reasons stated in his Petition and other filings in this case, and in the

following memorandum of Points and Authorities, the Court should grant the Petition.

### MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

### THE HABEAS PETITION SHOULD BE GRANTED BECAUSE THE STATE COURT DECISION WAS CONTRARY TO, OR AN UNREASONABLE APPLICATION OF, CLEARLY ESTABLISHED FEDERAL LAW, OR BASED ON AN UNREASONABLE DETERMINATION OF THE FACTS

#### A. PETITIONER HAS A FEDERALLY PROTECTED LIBERTY INTEREST IN PAROLE AND A RIGHT TO A PAROLE HEARING THAT COMPLIES WITH DUE PROCESS.

It is appropriate to look to lower Federal Court decisions to determine what law

has been "clearly established" by the Supreme Court and the reasonableness of a

particular application of the law. See Duhaime v. Ducharme, 200 F. 3d 597, 598 (9th Cir. 1999)

The Ninth Circuit has held that California's parole scheme creates a cognizable liberty interest in parole because Penal Code Section 3041 uses mandatory language and is similar to the Nebraska and Montana statutes addressed in Greenholtz and Allen respectively. [Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979) and Board of Pardons v. Allen, 482 U.S. 369, 371 (1987)] As the Ninth Circuit has explained: "Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process," and that interest arises "upon the incarceration of the inmate." Biggs v. Terhune, 334 F. 3d 910, 914-915 (9th Cir. 2003). See Sass v. California Board of Prison Terms (9th Cir 2006) 451 F. 3d 1123.

The Board may not make a decision that is "otherwise arbitrary." Irons v. Carey, 479 F. 3d 657, 662 (9th Cir. 2007), citing Sass, 461 F. 3d at 1128-29 and Superintendent v. Hill, 472 U.S. 445, 457 (1985). Parole suitability is "framed by the statutes and regulations governing parole suitability determinations in the relevant state." The Court must "look to California law to determine the findings that are necessary to determine whether the state court decision holding that these findings were supported by 'some evidence'...constituted an unreasonable application of the 'some evidence' principle articulated in Hill." Irons, Id. "Some evidence" that an inmate is currently dangerous must support a decision to find an inmate is unsuitable for parole in accordance with California statutes and regulations.

5.

In In re Dannenberg (2007) 156 Cal. App. 4th, 1387, Dannenberg "struck multiple blows to his wife's head with a pipe wrench. Bleeding profusely, she then 'fell or was pushed' into a bathtub full of water, where she drowned/" (Id. at p. 1394.) The court acknowledged that second-degree murder demonstrated a callous disregard for human suffering; yet, it concluded that the offense did not provide the requisite evidence that Dannenberg was presently dangerous. (Id. at p. 1398.)

The Court of Appeal found that "[n]o evidence in the record...supports a conclusion...that Dannenberg currently poses an unreasonable risk of danger to society if released." (In re Dannenberg, supra, 156 Cal. App. 4th at p.1391.)

This is also illustrated by Hayward v. Marshall (9th Cir. 2008)__F. 3d___ [2008 WL 43716] In Hayward, the court ruled that the Governor's 2003 reversal of parole based on the gravity of the petitioner's 1978 second-degree murder violated due process. (2008 WL 43716 at *8.) Hayward demonstrated the Biggs warning that the parole authority's "continued indefinite reliance on an unchanging factor, such as the circumstances of the commitment offense, pre-conviction criminal history, or other past conduct," may ripen into a due process violation in the face of a longstanding showing of reform and rehabilitation. (2008 WL 43716 at *7.)

Similarly, when viewed fairly and in context, there is no evidence that supports a determination that petitioner's release would unreasonably endanger public safety.

## B. THE CALIFORNIA PAROLE SCHEME REQUIRES THAT PAROLE SHALL NORMALLY BE GRANTED

The California legislature has clearly expressed its intent that when murderers-who are the great majority of inmates serving indeterminate sentences-approach their

6.

minimum eligible parole date, the Board "shall normally set a parole release date." (Pen. Code Section 3041, subd. (a).)

The Board's authority to make an exception based on the gravity of a life term inmate's current or past offenses should not operate so as to swallow the rule that parole is "normally" to be granted."

In 2006, 4,657 parole hearings were conducted. Parole was granted to only 23 inmates. The Board of Parole Hearings combined with the governor rejected 99.5 per cent of lifer's applications for parole. [Source: California Department of Corrections and Rehabilitation; Governor's Office, as reported in San Francisco Chronicle]

Petitioner contends that as a matter of law and logic, a parole granting rate of one half of one per cent fails to comply with the mandate of Penal Code Section 3041 (a) which requires that parole is normally to be granted. Petitioner maintains that applying the exception of Section 3041 (b) to well over ninety percent of the applicants considered by the Board violates due process.

## C. THE "SOME EVIDENCE" STANDARD REQUIRES THAT THERE BE SOME EVIDENCE THAT IS PROBATIVE OF CURRENT DANGEROUSNESS. THE BOARD'S FINDINGS MUST BE SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE

Parole unsuitability factors must be supported by a preponderance of the evidence. In re Rosenkrantz (2002), 29 Cal. 4th 616 at p. 670. The board failed to state that its findings were made in accordance with this burden of proof.

Court's reviewing the board's determinations have held that due process requires that "some evidence" support the board's determination and that the evidence relied upon

must possess "some evidence of reliability." Caswell v. Calderon, 353 F. 3d 832, 839 (9th Cir. 2004). See Cass v. Woodford, 2006 WL 1304953 at *9 (S.D. Cal. 2006)

It is not enough that there is some evidence to support the factors cited for denial of parole; that evidence must also rationally support the core determination required by the statute before parole can be denied, i.e. that a prisoner's release will unreasonably endanger public safety. In re Lee (2006) 143 Cal. App. 4th 1400, 1408.

Because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons [the board] cites for denying parole but whether some evidence indicates a parolee's release unreasonably endangers public safety." In re Barker (2007) 151 Cal. App. 4th 346, 366, italic omitted.)

The Federal "Some Evidence" standard as applied in Rosenkrantz v. Marshall (C.D. Cal. 2006) 444 F. Supp. 2d 1063 and Martin v. Marshall (N.D. Cal. 2006) 431 F. Supp. 2d 1038 finds that an aging commitment offense falls short of providing "some evidence" sufficient to justify a denial of parole. See also, Willis v. Kane (N.D. Cal. 2007) 485 F. Supp. 2d 1126.

Petitioner asserts that the "some evidence "standard is not appropriate at the fact finding level but only suitable for use by an appellate court in the context of reviewing lower court decisions. The Supreme Court explained in a plurality opinion that it has utilized the "some evidence" standard not as a standard of proof, but rather as a standard of review when examining an administrative record developed in an adversarial proceeding. Hamdi v. Rumsfield, 542 U.S. 5507, 124 S. Ct. 2633, 2651, 159 L. Ed. 2d 578 (2004), n. 8.

8.

The state courts that adopted Hill's some evidence standard to review parole decision held that prisoners did **not** have a due process liberty interest in parole. In re Powell 45 Cal. 3d 894, 911 (1988) Because the contrary is now established (McQuillion, 306 F. 3d at 902; Rosenkrantz, 29 Cal. 4th at 621; see Sass, 461 F. 3d at 1128), due process certainly demands a finding of something more than "some" (any) evidence in the record to secure a vested liberty interest protected by the Due Process Clause.

No other state whose parole statutes provide a protected liberty interest in parole, or any defined liberty interest allow it to be extinguished by the mere presence of any evidence whatsoever. In Carrillo v. Fabian, 701 N.W. 2d 763 (2005), the Minnesota Supreme Court recently and explicitly held that the some evidence standard of review of a prison disciplinary action established in Hill is inapplicable to the review of a correctional agency's decision affecting an inmate's parole date in a state whose statutes provide a protected liberty interest in parole.

The court held, based on the tripartite test prescribed by the Supreme Court, that the "substantial evidence" standard of review is requisite to provide adequate due process protection.

In Santosky v. Kramer (1982) 455 U.S. 745, 767-769, 102 S. Ct. 1388, 71 L. Ed. 2d 599, the High Court explained:

> This Court has mandated an intermediate standard of proof-"clear and convincing evidence"-when the individual interest in a state proceeding are both "particularly important" and "more substantial than mere loss of money." "Addington v. Texas, 441 U.S., at 424, 99 S. ct., at 1808...the Court has deemed this level of certainty necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with "a significant deprivation of liberty" of "stigma" [citations]...The extent to which procedural due process must be afforded

9.

> the recipient is influenced by the extent to which he may be 'condemned
> to suffer grievous loss'" Goldberg v. Kelly, 397 U.S. 254, 262-263, 90 S.
> Ct. 1011, 1017-18, 25 L. Ed. 2d 287 (1970), quoting Joint Anti-Fascist
> Refugee Committee v. McGrath, 341U.S. 123, 168, 71 S. Ct. 624, 646, 95
> L. Ed. 817 (1951) (Frankfurter, J. concurring).

Santosky v. Kramer, 455 U.S. 745, at 756, 758 (1982)

This Court should apply the clear and convincing or substantial evidence standard to

adjudicate petitioner's constitutional claims.

## D. THE BOARD'S RELIANCE ON THE COMMITMENT OFFENSE AND IMMUTABLE PRE-CONVICTION FACTORS TO DENY PAROLE VIOLATES PETITIONER'S DUE PROCESS RIGHTS

In Biggs v. Terhune (9th Cir. 2003) 334 F. 3d 910 the Ninth Circuit cautioned that

continued reliance on the circumstances of the offense could result in a due process

violation if the prisoner continually demonstrates exemplary behavior and evidence of

rehabilitation.

The Board's decision to deny parole in this case relied on the commitment offense

and petitioner's conduct prior to the commitment offense.

Petitioner is entitled to have his release date considered by a Board that is free from bias

or prejudice. O'Bremski v. Maas, 915 F. 2d 418, 422 (9th Cir. 1990)

Petitioner was denied parole based on the gravity of the commitment crime, the

circumstances of which can never change. Therefore, the Board's continued sole reliance

on the commitment offense will essentially convert petitioner's sentence of life with the

possibility of parole into a sentence of life without the possibility of parole. Petitioner has

no chance of obtaining parole unless the Board holds that his crime was not serious

enough to warrant a denial of parole. Irons v. Warden, (E.D. Cal. 2005) 358 F. Supp. 2d

936, 947.)

10.

The Board cited the "gravity" of the commitment offense in denying parole.

"[T]he measure of atrociousness is not general notions of common decency or social

norms for by that yardstick all murders are atrocious." In re Lee (2006) 143 Cal. App. 4th

1400, 1401. Viewed under the appropriate guidelines, petitioner's crime does not qualify

as unusually calculated, cruel or callous. He did not taunt the victim or gloat over his

distress. See People v. Misa (2006) 140 Cal. App.4th 937. 842-843.

The California Court of Appeal in In re Elkins (2006) 144 Cal. App. 4th discussed

the use of the gravity of the commitment offense to support a denial of parole:

> "Scott II summarizes the law in this situation. 'The Governor's
> assumption that a prisoner may be deemed unsuitable for release on the
> basis of the commitment offense 'alone' is correct [citation], but the
> proposition must be properly understood. The commitment offense is one
> of only two factors indicative of unsuitability a prisoner cannot change
> (the other being his 'Previous Record of Violence').
>
> Reliance on such an immutable factor 'without regard or consideration of
> subsequent circumstance' may be unfair [citation], and runs contrary to
> the rehabilitative goals espoused by the prison system and could result in a
> due process violation. [citation]
>
> The commitment offense can negate suitability only if circumstances of
> the crime reliably established by evidence in the record rationally indicate
> that the offender will present an unreasonable public safety risk if released
> from prison. Yet, the predictive value of the commitment offense may be
> very questionable after a long period of time. Thus, denial of release based
> solely on the basis of the gravity of the commitment offense warrants
> especially close scrutiny." (Scott II, supra, 133 Cal App. 4th at pp 594-595,
> fns. omitted.)

The Court of Appeal stated that "it violates due process to deny parole

"where no circumstances of the offense reasonably could be considered more

aggravated or violent than the minimum necessary to sustain a conviction for that

offense." (Scott II, supra, 133 Cal. App 4th at p. 598)…"

11.

The Court of Appeal in Elkins also observed: "We also take into account that whatever facts make a given offense aggravated or mitigated, compared to the hypothetical average are not overlooked or disregarded when the Board sets a release date...A release date is set by a calculation under matrixes Section 2403, subds. (b)-(f) that require the Board to weigh myriad facts of the offense that might be aggravating (Section 2404) or mitigating (Section 2405), including any factors that would have been considered by a judge in choosing a determinate sentence...Thus [the Board]...must remain focused not on circumstances that may be aggravating in the abstract but, rather, on facts indicating release currently poses "an unreasonable risk of danger to society." (Section 2402, subd. (a); accord, Pen. Code, Section 3041, subd. (b))."

The Board's reliance on Petitioner's commitment offense, which took place almost 21 years ago to deny parole, was unreasonable. A plethora of very recently issued California state and federal district court decisions uniformly holds that evidence of even particularly egregious facts of commitment offenses is not tantamount to evidence of undue current parole risk absent articulation of a nexus between those entities. Willis v. Kane, 485 F. Supp. 2d 1126, 1135 (N.D. Cal. 2007) ["Notwithstanding the terrible nature of the crime, the critical question the BPH was supposed to decide at the parole suitability hearing was whether 'consideration of the public safety requires a more lengthy period of incarceration for this individual'...Willis' 1983 crime did not provide sufficient evidence to find him unsuitable for parole in 2003."] Martin v. Marshall, 431 F. Supp. 2d 1038, 1049 (N.D. Cal. 2006);

Blankenship v. Kane, 2007 WL 1113798 at *10 (N.D. Cal. 2007) ["...the California regulations require...some evidence that the prisoner poses a present danger to

society…continued reliance over time on an unchanging factor…the commitment

offense…does not provide evidence of a present danger to society"]; <u>Thomas v. Brown,</u>

2006 WL 3783535 at *6 (N.D. Cal. 20060]; <u>Rosenkrantz v. Marhsall</u>, 444 F. Supp 3d.

1963, 1086 (C.D. Cal. 2006)

## E. THE BOARD'S DETERMINATION THAT A CRIME IS PARTIUCLARY CRUEL OR EGREGIOUS IS MADE IN AN ARBITRARY AND UNCONSTITUTIONAL MANNER

The Board's determination that petitioner's crime was especially cruel or

egregious is unconstitutionally vague and standard-less. See <u>United States v. Doremus</u>

$(9^{th}$ Cir. 1989) 888 F. 2d 630, 634.The Board relies on any fact of the crime to bolster its

conclusion that the crime is particularly egregious. The Board makes a determination that

virtually ALL life crimes are particularly egregious.

The board's characterization of petitioner's crime as exceptional was arbitrary since

the Board and governor routinely and invariably characterizes all offenses carrying life

terms as exceptional. Petitioner asks this Court to take judicial notice of the order in

**MIKE NGO On Habeas Corpus Superior Court of Santa Clara, No. 127611, August**

**30, 2007** where the Honorable Linda Condron found comprehensive evidence indicating

that the state's Board of parole hearings completely disregards the detailed standards and

criteria of the parole release statute, 15 CCR Section 2402 (c) and thereby denies

prisoners' due process rights. The Honorable Judge Condron found:

> "In summary, when every single inmate is denied parole because his or
> her crime qualifies as a Section 2402(c) (1) exception to the rule that a
> parole date shall normally be set, then the exception has clearly swallowed
> the rule and the rule is being illegally interpreted and applied.
>     When every single life crime that the Board examines is "particularly
> egregious" and "especially heinous, atrocious or cruel" it is obvious that
> the Board is operating without any limits and with unfettered discretion.
> "Based on the arbitrary characterization of every murder as being

13.

> exceptional, the Board's decision denying parole for petitioner is per se
> invalid because he was denied his constitutional right to be heard by an
> impartial decision-maker. See Withrow v. Larkin, 421 U.S. 35, 47, 95 S.
> Ct. 1456, 43 L. Ed. 2d 712 (1975) ("Not only is a biased decision maker
> constitutionally unacceptable but "our system of law has always
> endeavored to prevent even the probability of unfairness.")

When an inmate is found suitable for parole, the Board does not deem the crime as

particularly egregious. However, the governor when reviewing the Board's determination

may disagree and consider the crime as particularly egregious and deny parole. At a

subsequent hearing the Board may again classify the crime as particularly egregious.

The change in classification of the very same crime from being non-exceptional to

particularly egregious demonstrates the arbitrariness of the classification process itself.

The Board's use of uncharged and unproven elements of his crime to continue

denying parole violates petitioner's constitutional right to a jury trial. See Aprendi v.

New Jersey, 530 U.S. 466, 490.

## G.. CONTINUED RELIANCE ON THE COMMITMENT OFFENSE HAS DISTORTED THE BOARD'S DISCRETION

While a denial of parole by the Board in one case may appear reasonable when it

cites standardized reasons for denying parole, when dozens of decisions are read in

seriatim, it is apparent that the Board has an ultra vires policy of using the crime itself to

deny parole to virtually every inmate serving a life-term for murder. Petitioner has a due

process liberty interest in "not being denied parole for arbitrary or impermissible reasons"

[Meachum v. Fano, 427 U.S. 215, 226 (1976)] or as a result of "flagrant or unauthorized

action." [Monroe v. Thigpen, 932 F. 2d 1437, 1442 (11th Cir. 1991)] The Board fails to

give individualized discretion to inmates serving life terms by invoking the crime itself to

deny parole in virtually every case it considers.

Petitioner asks this Court to take judicial notice of his subsequent parole hearing scheduled for March 2008. See Pirtle v. California board of Prison terms, No CIV S-04-0518 FCD KJM P. 2007 U.S. Dist. LEXIS 28218, at \*59 (E.D. Cal. Apr 17, 2007), motion for reconsideration denied, 2007 U.S. Dist. LEXIS 53445 (E.D. Cal. July 24, 2007). Petitioner asserts that the Board will use the same factors to deny parole as if they were new. This probem occurs due to the turnover in Commissioners resigning or being fired, newly appointed commissioners never grasp the change in the prisoner and see the crime as if just occurred. (See Cal. Penal Code § 5075.)

The commitment offense no longer supplies any evidence that petitioner posed a danger to public safety. The board failed to articulate a nexus between the commitment offense and a finding that petitioner still posed a danger to public safety.

Petitioner's commitment offense was not particularly egregious because there was no more than the minimum elements present necessary to convict petitioner of first-degree murder.

The Board's denial of parole suitability based upon the gravity of the commitment offense failed to consider that petitioner has reached the maximum eligible parole date for a first degree murder and failed to analyze the crime in light of that fact. The respondent's position that petitioner who was convicted of first-degree murder may forever be denied parole based on some modicum of evidence that the crime rose to the level of a first degree murder with special circumstances, without acknowledging the fact that petitioner has already served the time for the most heinous first-degree described in the Board's own guidelines that do not preclude parole, should be seen as so ridiculous

15.

that simply to state it is to refute it. In re Weider 920060 145 Ca. App. 4th, 570, 582-583. The Board should have weighed petitioner's crime against instances of first-degree murder with special circumstances in assessing the applicability of any Section 2402(c)(1) criteria.

## CONCLUSION

The Board failed to articulate what it is about petitioner's crime that outweighs all the statutorily mandated parole release standards. The Board systematically uses the fact of a murder conviction, without more, to keep prisoners locked up for the rest of their lives. The role of the parole board is not to resentence the prisoner according to the personal opinions of its members as to the appropriate penalty for murder, but to determine whether as of this moment, given the statutory factors, he should be released.

The Board stated no justifiable reasons for denying parole. "The evidence must substantiate the ultimate conclusion that the prisoner's release currently poses an unreasonable risk of danger to the public. It violates a prisoner's right to due process when the Board or Governor attaches significance to evidence that forewarns no danger to the public or relies on an unsupported conclusion." In re Tripp (2007) 150 Cal. App. 4th 306, 313

DATED: 02/28/2008

Respectfully submitted;

Ronald J. Moore
Petitioner in Pro Se

## PROOF OF SERVICE

I,  Hector Oropeza          , declare that I am over the
age of 18 years of age and not a party to this matter. I am
familiar with the business practice of the San Quentin's
Correctional staff of collection and processing of correspondence
for mailing with the United States Postal Service.

On February 28, 2008, I served the attached "TRAVERSE TO THE
ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF
POINTS AND AUTHORITIES" by placing a true copy thereof enclosed
in a sealed envelope with postage thereon addressed as follows:

Office of the Attorney General
455 Golden GAte AVenue, Suite 11000
San Francisco, CA 94102-7004

I declare under penalty of perjury under the laws of the State
of California the foregoing is true and correct and that this
declaration was executed on this 28, day of February 2008,
at San Quentin State Prison 94964.

Declarant

H·24646

P.O. Box D92538
CSP-San Quentin
San Quentin CA, 94974

LEGAL

MAIL

Office of the Clerk,
U.S. District Court of the
Northern District of California
450 Golden Gate Avenue
San Francisco, CA 94102